IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re ) | |
| ) | |
| ANNE ELIZABETH CLINK, ) | |
| ) | Case No. 10-21489-DRD-7 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| NANCY J. GARGULA, ) | |
| UNITED STATES TRUSTEE ) | |
| ) | |
| Movant, ) | |
| v. ) | |
| ) | |
| NOEL BISGES, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

The matter before the Court is the motion filed by Nancy J. Gargula, United States Trustee ("Movant" or "UST") against Noel Bisges ("Respondent") seeking sanctions and disgorgement of fees ("Motion").

This is a core proceeding under 28 U.S.C. §157(b)(2)(A) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to these proceedings by Rules 9014(c) and 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court finds that: Respondent violated the provisions requiring a written contract and orders Respondent to disgorge all fees paid to him by Debtor in the amount of $1,411; Respondent violated §

707(b)(4) and imposes sanctions against Respondent totaling three times the amount of fees he collected in this case to be paid to the estate totaling $4,233.00; and refers Respondent to the United States District Court for the Western District of Missouri under Local Rule 83.6(d) for disciplinary proceedings and an investigation into his misconduct based on advising his client to mislead and lie to the Court.

## I.  FACTUAL BACKGROUND

Respondent Noel Bisges represented Anne Elizabeth Clink ("Debtor") in the filing of this Chapter 7 case which was filed on July 14, 2010.  Debtor received her discharge on October 7, 2010.  On October 25, 2010, this case was closed as a no-asset case.  On February 25, 2011, the UST filed a motion to reopen the case after learning Debtor may have failed to disclose assets. The case was reopened and the UST conducted 2004 exams of Debtor and Respondent.  The case trustee determined that Debtor owned horses that were not disclosed on her Schedules and filed an objection to her amended claim of exemption on bad faith grounds.  The dispute was ultimately settled by Debtor paying $1,000 to the case trustee.

Respondent also represented Josh Kyle Woods ("Woods"), Debtor's ex-husband, in his Chapter 7 case which was filed on September 27, 2010.  Debtor and Woods' marriage was dissolved by a judgment entered on March 3, 2010 in the Circuit Court for Moniteau County, Missouri.  Pursuant to a separation agreement contained in the divorce decree, Woods agreed to indemnify Debtor against any claims made against her related to a $20,000 loan.  Amounts were still due on the loan at the time of the filing of both Debtor's and Woods' bankruptcies.

On November 10, 2010, after Woods had commenced his bankruptcy, Debtor retained another attorney to advise her on filing an adversary proceeding against Woods regarding the

2

non-dischargeability of her claims against him. On June 15, 2011, Debtor and Woods entered into a consent judgment on the adversary complaint.

The UST filed this Motion seeking disgorgement of fees and sanctions on August 23, 2012 and a trial was held by this Court on February 13, 2013.

## II. DISCUSSION AND ANALYSIS

### A. Disgorgement- Failure to execute written agreement

Sections 528(a)(1) and (2) of Title 11 provide that a debt relief agency shall execute a written contract with an assisted person within 5 business days of first providing bankruptcy assistance to the assisted person, and that the debt relief agency shall provide the assisted person with a copy of the fully executed contract. Section 526(c)(1) provides that any agreement entered into that does not comply with sections 526, 527 or 528 "shall be void and may not be enforced by an Federal or State Court or any other person...." Section 105(a) may be used as a means of enforcing and carrying out this provision and courts have held that an order providing for disgorgement may be appropriate. *See United States Trustee v. Reyes (In re Reyes)*, 2007 WL 6082567, *3 (S.D. Fla. 2007).

As an initial matter, the Court must determine whether Respondent qualifies as a "debt relief agency" under §101(12A)[1]. That section defines debt relief agency, in relevant part, as "any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration.... but does not include any person who is an officer, director, employee, or agent of a person who provides such assistance." Respondent argued that he did not fall within such definition because his law office was a professional

---

[1]There is no dispute that Debtor is an "assisted person" under § 101(12A).

corporation (P.C.) or a limited liability company (L.L.C.). However, Respondent did not produce any evidence to prove such assertion and, in fact, the record shows that Debtor's checks to him were made payable to him personally and that he endorsed the checks with a stamp reading "Noel Neal Bisges." The signature card and the Resolution of Authority form filed with his bank on the account into which the funds were deposited also list the sole account owner as "Noel F. Bisges," a sole proprietor. Respondent also testified, and the exhibits show, that he filed the bankruptcy documents as "Noel Bisges, Attorney-at-Law" and did not indicate he was operating as a corporate entity and correspondence from his law office does not indicate P.C. or L.L.C. in the letterhead. It is clear from the testimony that Respondent personally provided the bankruptcy services for Debtor and was operating as a sole proprietor and not as an officer or agent of a corporation. Thus, Respondent falls within the definition of "debt relief agency" and must comply with §§ 526(c)(1) and 528(a) (1) & (2).

The UST urges the Court to order Respondent to disgorge all fees paid by Debtor based on his violation of §§ 526(c)(1) and 528(a) (1) & (2) in failing to obtain a written contract with Debtor. Respondent did not deny this failure and in fact, admitted at trial that he erred in this regard. He could offer no documentation or testimony that he had a signed agreement. There has been no dispute by Respondent that Debtor did not execute a written contract for his services and he is therefore in violation of § 528(a)(1) and 2. This Court agrees that Respondent has clearly violated the provisions requiring a written contract and, pursuant to § 105(a), orders Respondent to disgorge all fees paid to him by Debtor in the amount of $1,411.

    **B.**    **Other Sanctions**

The UST also argues that other sanctions are warranted under §105(a) for the violation of

§§ 526 and 707(b)(4). She asserts Respondent violated §526(a)(2) by knowingly and intentionally advising Debtor to make untrue or misleading statements in documents filed in the bankruptcy case and violated §707(b)(4) by submitting schedules and statements that were inaccurate and which were materially different than the documents actually signed by Debtor.

### 1.      Counseled Debtor to Mislead Court

Section 526(a)(2) provides that "a debt relief agency shall not... make any statement, or counsel or advise any assisted person...to make a statement in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading." The UST asserts that Respondent intentionally advised Debtor not to disclose a potential preferential transfer made to her mother in the amount of $3,000. Debtor testified to, and the evidence shows, an e-mail from Respondent to Debtor regarding a payment Debtor made to her mother immediately before filing bankruptcy. In the e-mail, Respondent advises Debtor that a payment to her mother shouldn't happen but "short of it not happening, my next best advice is to make sure it cannot be traced and stick with the story. It did not happen." Respondent admitted in his testimony that he should never had made such statement and advise her to lie and that he did it out of frustration.

Based upon the testimony and the e-mail message submitted as an exhibit, the Court can make no determination other than Respondent advised his client to make misrepresentations to the Court regarding a possible preferential payment she made to her mother. Respondent asserted in his testimony that when Debtor asked him about the transaction with her mother that he was unclear as to whether the funds given to Debtor constituted a loan or a gift because she put the word "borrowed" in quotation marks in her e-mail to him. He also argued that he was

unclear as to whether the repayment to her mother had already been done or was merely being contemplated. The Court finds that the evidence is clear that Debtor considered the transaction a loan from her mother and also that she had already made a repayment to her mother of $3,000. Respondent's arguments are not relevant because whether he regrets providing the advice in the e-mail with hindsight, or whether Debtor followed such advice or not, does not alter the fact that the advice was given. This is clearly in violation of §526(a)(2). Section 526(c)(5) provides that if this court finds that a person intentionally violated this section, the court may impose an appropriate civil penalty against such person. The Court will discuss sanctions following discussion of the remaining allegations.

### 2. Inaccurate Schedules

The UST also alleges that Respondent violated §707(b)(4) by filing inaccurate schedules by counseling Debtor not to list her horses or failing to properly investigate whether Debtor owned any animals. Section 707(b)(4)(C) provides that "the signature of an attorney on a petition, pleading, or written motion shall constitute a certification that the attorney has (i) performed a reasonable investigation into the circumstances that gave rise to the petition, pleading or written motion; and (ii) determined that the petition, pleading or written motion (I) is well grounded in fact; and (II) is warranted by existing law ...and does not constitute an abuse under paragraph (1)." Section 707(b)(4)(D) also provides that "the signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect."[2]

---

[2] Rule 9011 provides: (b) Representations to the court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, ... (3) the allegations and other factual contentions have evidentiary support or, if specifically so

6

Respondent testified that Debtor did not in fact disclose to him the fact that she still owned horses but that he knew Debtor had owned horses previously and he did not ask her directly if she had sold the horses. He also testified that he knew she owned a stock trailer but did not inquire further as to whether she still also owned horses. In addition, Debtor testified that she specifically disclosed to Respondent that she still owned three horses and he advised her that no one lists horses on their schedules and not to do so because they had little value. She also testified that she wrote a note and faxed it to Respondent questioning the need to list animals. The evidence presented shows a handwritten notation made by Debtor on a draft schedule with a question about whether certain animals ("horses, cats, dogs") needed to be listed and a fax sent to Respondent by Debtor on which she had written "animals?" at the bottom. Respondent admitted that he received a fax but denies it included a notation about animals. The same document in his files does not show that notation on the bottom. The bankruptcy trustee testified that she later found out about the failure to list the horses and reopened the case to investigate. In her investigation she spoke with Respondent and remembered the gist of the conversation being that there were some horses but that they didn't really have any value. This is consistent with Debtor's testimony. In addition, the Schedules fail to list Debtor's mother as a creditor, although the evidence clearly shows that Debtor had informed Respondent of this fact.

Based on all of the testimony and evidence presented to the Court, the Court finds that it is more credible that Respondent knew Debtor still owned horses and failed to list them on her Schedules than is his testimony that she didn't disclose the horses. The Court is not accusing Respondent of altering the fax document but notes that Debtor submitted the original fax and the

---

identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery....

only document Respondent could produce was a copy of a fax that had been scanned onto a computer. It is thus more credible to the Court that Debtor's fax document contains the full fax and that the scanned copy may have cut off the bottom of the actual fax. Further, Debtor's notation on the draft Schedule shows that she did not intend to conceal her animals as property.

Even if Debtor did, in fact, fail to disclose her ownership of horses, Respondent knew that she had previously owned horses and there is no evidence that she had given to him any documentation showing that they were sold. Respondent had a duty under § 707(b)(4)(C) to investigate whether Debtor still owned the horses or not. Respondent may have believed that the horses were of minimal value, but that was not his decision to make. It was therefore inappropriate to advise Debtor it was unnecessary to list them on her Schedules. It was Respondent's duty to advise Debtor to list all of the property she owned and the case trustee could then decide whether the property was of sufficient value to warrant her attention.

### 3.     Amended documents filed without Debtor signature

Additionally, the UST alleges that Respondent was also in violation of § 707(b)(4)(C) by filing schedules and statements with Debtor's bankruptcy petition that were materially different than the schedules and statements actually executed by Debtor. Debtor testified that she signed the schedules at Respondent's office but that she then went home and reviewed them further for accuracy. Respondent made other changes to the Schedules before filing and Debtor did not sign the documents that were filed. In fact, Respondent admitted in his testimony that he made a mistake and did not have Debtor come back in and sign the petition and schedules after he had made changes. Based on the evidence presented, the Schedules filed by Respondent were clearly different than those signed in his office by Debtor in that they were amended to add creditors and

assets, and Debtor never signed the documents that were filed with this Court. An Amended Petition and amended Schedules were also subsequently filed and Respondent failed to obtain Debtor's signature on these documents also. Respondent testified that these were standard practices in his law office. The Court agrees with the UST that this also violates § 707(b)(4)(C) and this Court's Electronic Court Filing Administrative Procedures.[3] *See, e.g., Triepke*, 2012 WL 1229524, *8.

### 4. Sanctions

Section 105 gives bankruptcy courts broad power to implement the provisions of the Code and to prevent an abuse of the bankruptcy process, which includes the power to sanction counsel. *See In re Triepke*, 2012 WL 1229524 (Bankr. W.D. Mo. 2012). Sanctions are meant to serve the dual purpose of deterrence and compensation-- to deter repetition of such conduct and to compensate for the reasonable costs incurred as a result of that conduct. *See id.*

It is clear that Respondent violated his duty under §707(b)(4)(C) to perform a reasonable investigation into the facts contained in Debtor's petition and schedules and his signature on such documents was in violation of his certification that he had no knowledge after an inquiry that the information in the schedules was incorrect pursuant to §707(b)(4)(D). As in *Triepke*, Respondent violated Rule 9011 and §707(b)(4) by failing to make a reasonable inquiry that would have identified errors and admissions in Debtor's schedules and statements and by failing to obtain Debtor's signature on the amended documents prior to filing them. However, unlike in

---

[3] W.D. Mo. Bankr. Ct. ECF Administrative Procedures, Section II.D.5 provides that the filing of a document that is required to be signed by another person is the filer's representation that the party whose signature is required has, in fact, signed the document. The Court also notes that Respondent testified that he had destroyed the hard copies of his records after scanning them onto a computer before the applicable 2-year retention period had expired. W.D. Mo. Bankr. Ct. ECF Administrative Procedures, Section II.D.6.

*Triepke*, Respondent in this case did in fact intend to mislead the Court.

Accordingly, based on all of the evidence and testimony, the Court imposes sanctions against Respondent totaling three times the amount of fees he collected in this case to be paid to the estate totaling $4,233.00.

### C.    Violation of Missouri Rules of Professional Conduct

The UST also alleges that Respondent violated certain Missouri Rules of Professional Conduct. Specifically, the UST asserts Respondent violated Rule 4-1.7 by representing Debtor's ex-husband concurrently with Debtor which presented a conflict of interest; violated Rules 4-1.3 and 4-1.4 when Respondent failed to attend the meeting of creditors and failed to obtain Debtor's consent to use substitute counsel; and violated Rule 4-3.3 when Respondent failed to disclose to the Court that he retained substitute counsel for the meeting of creditors and failed to obtain Debtor's signature on the amended documents. The UST urges the Court to refer Respondent to the United States District Court for the Western District of Missouri for proceedings in compliance with the complaint provisions of Local Rule 83.6(d)(3) and the trial panel provisions of Local Rule 83.6(d)(4), as incorporated by Local Bankruptcy Rule 2901-1(A).

### 1.    Rule 4-1.7

Rule 4-1.7 provides that a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

The UST asserts that Respondent violated this Rule because his representation of Debtor's ex-husband at the same time he was representing Debtor was a conflict of interest. The Court will initially address Respondent's argument that the UST was required to offer expert testimony at trial in order to prove this issue. All of the cases presented to the Court by Respondent are cases dealing with legal malpractice issues in regards to conflicts of interest and, in particular, claims asserted under state tort law. In those types of cases, an expert witness is required to establish the standard of care. However, those circumstances are distinguishable from this case which involves whether Respondent violated an ethical rule which is a legal question that this Court has the ability to decide. The cases cited by the UST are more persuasive and conclude that a disciplinary proceeding for sanctions is different than a civil legal malpractice action. *See, e.g., In re Disciplinary Action Against McKenchnie*, 656 N.W. 661, (N.D. 2003). The Missouri Supreme Court Rules are applicable here because the Western District of Missouri has adopted the standards of the state supreme court but the conflict determination is rooted in the Code and this Court has broad discretion in imposing sanctions when a conflict of interest arises between an attorney and client. *See In re McGregory*, 340 B.R. 915, 922 (2006). Further, the Court agrees with the UST that it is required to make determinations regarding conflicts with regularity in connection with the retention of professionals under § 327 and Rule 2016.

Accordingly, the Court will now discuss the conflict of interest allegation against Respondent for representing Debtor's ex-husband concurrently with his representation of Debtor and without her consent. Debtor claims that pursuant to her divorce decree, she was to pay a $40,000 debt that was co-signed by her mother, and her ex-husband was to pay a separate joint

11

debt in the amount of $20,000. Further, Debtor and her ex-husband agreed to separately indemnify each other for any failure to pay these debts and the decree had cross-indemnification and hold harmless provisions with respect to those two debts. Respondent filed the bankruptcy petition for Debtor in July 2010 and, prior to the closing of that case, filed a bankruptcy petition for Debtor's ex-husband in September 2010.

While the decision to represent both Debtor and her ex-husband in separate bankruptcies was perhaps unwise, the Court finds that in this case the representation was not "directly adverse" to Debtor as required by the Rule. Any debt owed to Debtor by her ex-husband under the divorce decree was clearly non-dischargeable under § 523(a)(15) which provides that an obligation to a former spouse under a divorce decree is not dischargeable. There was no issue to litigate with respect to that question. Secondly, any indemnities owed to Debtor by her ex-husband would never arise because the underlying debt was being discharged in her bankruptcy and not reaffirmed. Finally, the Court notes that Respondent withdrew from his representation of Debtor when the potential conflict became actual. All of these conclusions convince the Court that Respondent's representation of Debtor and her ex-husband in their separate bankruptcies was not, under the circumstances, "directly adverse" to Debtor and, therefore, not a violation of Rule 4-1.7

    **2.**    **Rules 4-1.3 and 4-1.4**

The UST also contends that Respondent violated Rules 4-1.3 and 4-1.4 when Respondent failed to attend the meeting of creditors and failed to obtain Debtor's consent to use substitute counsel. Rule 4-1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client. Rule 4-1.4 provides that a lawyer shall keep the client reasonably informed

about the status of a matter; promptly comply with reasonable requests for information; and consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows the client expects assistance not permitted by the Rules of Professional Conduct or other law.

Respondent testified that he was to be at a conference on the date of Debtor's 341 meeting so he arranged for a substitute attorney to attend who is competent and attends many 341 meetings. He testified that he contacted Debtor and advised her someone was going to stand in for him at that meeting and that she did not object. The Court does not believe that these particular Rules are applicable to Respondent's actions with regard to sending substitute counsel to the 341 meeting. The UST has not cited any relevant authority that supports this assertion and the Court finds that Respondent's actions in that regard did not violate Rules 4-1.3 or 4-1.4. Indeed, this Court's Rights and Responsibilities form required to be signed by attorneys and their clients provides specifically that a debtor's attorney shall "attend the § 341(a) meetings and any court hearings, either personally or through another attorney from his or her firm or through an appearance attorney who has been adequately briefed on the case."

   3.  **Rule 4-3.3**

Finally, the UST contends that the Respondent violated Rule 4-3.3 when he failed to disclose to the Court that he retained substitute counsel for the meeting of creditors and failed to obtain Debtor's signature on the amended documents. Rule 4-3.3 provides, in relevant part, that a lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer; or offer evidence that the lawyer knows to be false.

The Rule is not applicable to retaining substitute counsel for the 341 meeting. The Court is not aware that the practice of retaining substitute counsel to cover a 341 meeting in one's absence is in violation of any provision. However, Rule 4-3.3 is not applicable because a 341 meeting is not a court proceeding. With regard to the fact that Respondent filed schedules and did not obtain Debtor's signature on the documents, the Court has addressed that violation above and has already sanctioned Respondent's behavior under those other provisions so does not need to further address it under Rule 4-3.3.

Therefore, based on the above discussion regarding the Missouri Supreme Court Rules of Professional Conduct, the Court declines to refer Respondent to the United States District Court for the Western District of Missouri for proceedings in compliance with the complaint provisions of Local Rule 83.6(d)(3) and the trial panel provisions of Local Rule 83.6(d)(4), as incorporated by Local Bankruptcy Rule 2901-1(A) as the UST requested for violation of Rules 4-1.7, 4-1.3, 4-1.4 and 4-3.3. However, based on the egregious behavior of Respondent as discussed above, this Court will refer Respondent to the United States District Court for the Western District of Missouri under Local Rule 83.6(d) for disciplinary proceedings and an investigation into his misconduct based on advising his client to mislead and lie to the Court.

The Court orders that Respondent disgorge the fees paid to him in the amount of $1,411

to Debtor and pay the amount of $4,233 as sanctions to the bankruptcy estate within 15 days from the date of entry of this Memorandum Opinion. Within that same period, Respondent shall file a certification with the Court the he has complied with this requirement.

Dated:     April 23, 2013         /s/ Dennis R. Dow
    THE HONORABLE DENNIS R. DOW
    UNITED STATES BANKRUPTCY JUDGE